IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| RUTH RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:12cv160-CSC |
| | ) | (WO) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to the United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).³

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. The plaintiff was 47 years old on the date of onset (R. 80, 91) and 49 years old at the time of the hearing before the ALJ. (R. 28). She has a high school education and an associate's degree in accounting. (*Id*.). Her past work experience includes

---

³ *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

3

work as a clerk. (R. 18). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "diabetes mellitus, hypertension, and an affective mood disorder." (R. 14). The ALJ concluded that the plaintiff was able to return to her past relevant work as a clerk, and thus, she was not disabled. (R. 18).

**B. Plaintiff's Claims**. The plaintiff presents the following three issues for the Court's review.

1. The administrative law judge erred in rejecting the opinion of Dr. Stewart, the plaintiff's treating physician. (Doc. # 17, Pl's Br. at 9).

2. The administrative law judge's credibility determination and rejection of Russell's testimony is based on misstatements of the record. (*Id*. at 11).

3. The Appeals Council erred in failing to remand this case based upon new evidence. (*Id*. at 13).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The ALJ must conscientiously probe into, inquire of and explore

4

all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments.

> *Any* such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual *shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.*

42 U.S.C. § 405(b)(1) (emphases added). Within this analytical framework, the court will address the plaintiff's claims.

**A. Treating Physician.** Russell argues that the ALJ improperly rejected her treating physician's opinion without identifying evidence that contradicted his opinion. (Doc. # 17, Pl's Br. at 9-10). According to the plaintiff, the ALJ "identified no evidence that is contrary to with (sic) Dr. Stewart's findings because there is none." (*Id*. at 10). Of course, this is not the standard for evaluating the treating physician's opinion.

The law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide

> a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-62.

There are, however, limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence. *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

On July 31, 2008, Dr. Jeff Stewart completed a residual functional capacity questionnaire assessing Russell's physical impairments. (R. 379-82, 403-07). According to Dr. Stewart, Russell suffered from diabetes, neuropathy, dyslipidemia[4], menopause and depression. (R. 379, 403). Dr. Stewart opined that Russell's symptoms were severe enough to frequently interfere with her ability to concentrate, and she had marked limitation in her ability to handle work stress. (R. 380, 404). He also opined that emotional factors *did not* contribute to Russell's functional limitations. (*Id*.) According to Dr. Stewart, Russell would be unable to walk even a city block without rest; she could sit for 30 minutes and stand for 10 minutes. (R. 381, 405). Finally, Dr. Stewart opined that Russell was "probab[ly] not able to do a normal 8 hr. workday." (*Id*.)

On February 27, 2009, Patricia Harden, a certified registered nurse practitioner, submitted a letter on Russell's behalf.

> Mrs. Russell has several medical problems which includes (sic) diabetes mellitus (insulin dependent) with complications and neuropathy. She has to have assistance in getting herself dressed because of intense pain in her joints, knees, feet, ankles, shoulders, and arms. Her condition deteriorates a little each day and she is becoming more hopeless. She is receiving sample medications from our office. I am respectfully writing this letter to request that you review this patient's disability case right away.

(R. 440). Dr. Stewart signed this letter on March 10, 2009.

After reviewing the medical evidence, the ALJ gave Dr. Stewart's diabetes questionnaire "limited weight" because "this assessment is inconsistent with the medical

---

[4] Dyslipidemia is the diagnostic name for high cholesterol.

7

record as a whole. The record did not provide visual acuity examinations that documented blurred vision/retinopathy and the record did not substantiate neuropathy." (R. 17). The ALJ acknowledged that Russell suffers from insulin dependent diabetes mellitus, but after a thorough review of her treatment records, discounted Dr. Stewart's assessment.

The ALJ's decision to give Dr. Stewart's assessment little weight is supported by substantial evidence. Although Russell testified that her most disabling impairment is pain caused by diabetic neuropathy, Dr. Stewart's treatment records do not support his assessment of the severity of this impairment. Dr. Stewart began treating Russell on May 28, 2008. (R. 420). At that time, she complained of neuropathy in both feet and lower legs, and pain in her shoulders and elbows. (*Id*.) Dr. Stewart noted that Russell had altered sensation in her feet and tingling in her legs. (*Id*.) She was directed to follow up in one week. Dr. Stewart prescribed medications, gave her samples and gave her instructions regarding her diet and exercise. (*Id*.)

Russell returned to Dr. Stewart on June 26, 2008. (R. 419). At that time, she complained of pain in her lower legs and "hurting all over." (*Id*.) Dr. Stewart recommended a venous doppler test of her right leg and an eye exam. (*Id*.) On July 31, 2008, Dr. Stewart noted that Russell was doing better because she was on medication to treat her diabetes. (R. 418). At that time, Russell was wearing glasses and did not complain of blurred vision. (*Id*.) On the same day, Dr. Stewart completed the residual functional capacity questionnaire assessing Russell's physical impairments. (R. 379-82, 403-07). At that time, Dr. Stewart had

8

seen Russell three times in two months. Yet, Dr. Stewart opined that Russell's symptoms were severe enough to frequently interfere with her ability to concentrate, and she had marked limitation in her ability to handle work stress. (R. 380, 404). He also opined that Russell was "probab[ly] not able to do a normal 8 hr. workday," (*id*.) even though his treatment note indicated that Russell was doing better because she was on medication.

On September 2, 2008, Dr. Stewart advised Russell to lose weight and exercise. (R. 417). Her medication was adjusted. (*Id*.) Russell returned to Dr. Stewart on December 22, 2008. (R. 416). At that time. she reported that she "forgets sometime to take her medication" including her insulin. (*Id*.) She also stated that she sometimes didn't take her medication correctly, and she was not always eating an appropriate diet. She complained of pain in her legs and joints. Dr. Stewart advised Russell that not taking her insulin daily was "stupid," and she was warned not to return to the clinic if she was not going to take her medications as prescribed. (*Id*.)

On January 21, 2009, Russell presented to Dr. Stewart complaining of congestion and sore throat, and requesting medication for her nerves. (R. 415). On February 17, 2009, Russell returned to Dr. Stewart, crying with pain in her right leg. An x-ray on her knee and a venous doppler test were both negative. (R. 414).

On February 27, 2009, Patricia Harden, a certified registered nurse practitioner, wrote a letter on Russell's behalf including information that is not contained anywhere in Dr. Stewart's treatment notes. For example, Nurse Harden indicated that Russell "has to have

assistance in getting herself dressed because of intense pain in her joints, knees, feet, ankles, shoulders, and arms." (R. 440). There is no notation any where in Dr. Stewart's treatment records substantiating this statement.

In addition, in conflict with this letter, on March 3, 2009, Russell reported that she was doing better because the "Celebrex helps pain a little and Cymbalta is very good for her depression and anxiety." (R. 413) At this time, Dr. Stewart reviewed Russell's medications, diet and exercise with her again. (*Id*.)

Dr. Stewart initially assessed Russell with marked limitations based on three office visits. Nurse Harden's assessment of Russell's condition came after four more office visits. Her assessment is contradicted by Dr. Stewart's treatment note of March 2, 2009. Consequently, Dr. Stewart's own treatment notes do not support the level of disability he attributes to Russell.

In addition, the other medical evidence of record support the ALJ's decision to discount Dr. Stewart's opinion. Prior to seeking treatment from Dr. Stewart, on January 2, 2007, Russell was hospitalized at the Tanner Medical Center, complaining of pelvic pain. (R. 228). The initial impression was an ovarian cyst. (*Id*.) When she was admitted, she denied any "muscular weakness, incoordination (sic), tingling or numbness." (R. 229). She denied and joint, muscle or back pain. (*Id*.) She denied any anxiety or depression. (*Id*.) She was in "no acute distress," and she complained only of abdominal pain. (R. 230) In addition, her mood and affect were normal as was her gait. (R. 231).

On January 3, 2007, Dr. Joseph Palin examined Russell. (R. 243-45). At that time, Russell denied any change in vision. (R. 244). A physical examination revealed only abdominal pain; no other problems were noted. (*Id*.) A small ovarian cyst was found on her right ovary. (*Id*.) At no time during this hospitalization did Russell complain of neuropathy or blurred vision. (R. 228-250).

On January 18, 2007, Russell was admitted to West Georgia Medical Center for a total abdominal hysterectomy. (R. 261-271). Dr. Bowie also repaired a ventral hernia. (R. 262).

On May 2, 2007, Russell presented to the West Georgia Center for Diabetes and Endocrinology complaining of fatigue, blurred vision and intermittent parasthesia and burning. (R. 333). However, physical examination did not indicate any neuropathy or retinopathy. (R. 334).

Russell was admitted to West Georgia Medical Center on May 24, 2007 complaining of abdominal pain, nausea, vomiting and uncontrolled diabetes. (R. 272-280). At that time, Russell admitted that she was noncompliant with her diet and she did not take her diabetic medication correctly. (R. 273). She was released with instructions to "follow a strict ADA diet and be compliant with her diet and medication." (*Id*.)

On June 6, 2007, Russell returned to the West Georgia Center for Diabetes for a check-up. At that time, she complained of neuropathy but did not complain of blurred vision. (R. 331). The assessment noted hypertension and hyperlipidemia but did not indicate neuropathy or retinopathy. (R. 332). On the same day, Russell presented to the emergency

room complaining of abdominal pain. (R. 251). She had no other complaints. (*Id.*)

On June 8, 2007, Russell was seen at LaGrange Internal Medicine for her diabetes. (R. 291-298). She did not bring her medications as directed. (R. 291). On this date, she complained of right side pain and swelling in her hands and abdomen. (R. 292). She denied any blurred vision or other issues with her eyes. (R. 294). She also denied any symptoms of neuropathy.

> Denies back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, arthritis, sciatica, restless legs, leg pain at night, and leg pain with exertion.
>
> \*   \*   \*
>
> Denies paralysis, paresthesias, seizures, tremors, vertigo, transient blindness, frequent falls, frequent headaches, and difficulty walking.
>
> \*   \*   \*
>
> Denies depression, anxiety, memory loss, suicidal ideation, hallucinations, paranoia, phobia, and confusion.

(R. 295)

Russell was directed to continue her current treatment regime including exercise and diet. (R. 296).

On June 20, 2007, Russell returned to LaGrange Internal Medicine for a follow-up appointment regarding her diabetes. (R. 285-290). She reported suffering from pancreatitis although the "[a]bdominal ultrasound report does not reveal any evidence of pancreatitis." (R. 286). She complained of abdominal pain. (*Id.*) During the physical examination, Russell

appeared uncomfortable "especially so with movement," but she had good range of motion in her back and no edema. (R. 288). Russell was encouraged to exercise and comply with her dietary and medication instructions. (R. 289).

On November 15, 2007, Russell returned to the West Georgia Center for Diabetes for the first time in five months. She was interested in an insulin pump. (R. 329). At that time, she complained of neuropathy but did not complain about her vision. (*Id*.) Russell was denied an insulin pump because she was non-compliant with her medications. It was noted that Russell had not taken two medications previously prescribed. (R. 329-330). She was also non-compliant on diet and exercise. (R. 330). It was after this doctor's visit that Russell sought treatment from Dr. Stewart.

The ALJ may disregard the opinion of a physician, provided that he states with particularity reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278 (11th Cir. 1987). The ALJ examined and evaluated the treatment records for evidence supporting Dr. Stewart's assessment of Russell's ability to work, and he considered Russell's own testimony. Only then did the ALJ discount Dr. Stewart's assessment of Russell's abilities. "While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability [Russell] claimed." *Freeman v. Barnhart*, 220 Fed. Appx. 957, 960 (11th Cir. 2007). Thus, the court concludes that even if the Commissioner failed to refer to all of Russell's medical evidence, any error was

harmless.[5] *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in the Social Security case context). The evidence in the record supports the ALJ's findings regarding Dr. Stewart's assessment of Russell. "Even though Social Security courts are inquisitorial, not adversarial, in nature, claimants must establish that they are eligible for benefits." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)). *See also Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir. 1988). This the plaintiff has failed to do. Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ properly rejected Dr. Stewart's opinion regarding the limitations caused by Russell's diabetes.

**B. Credibility Analysis**. Next, the plaintiff argues that the ALJ's credibility finding was based on misstatements of the record. *See* Doc. # 17, Pl's Br. at 11. "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221,

---

[5] To the extent that Russell complains that the ALJ failed to consider her complaints of blurred vision, a review of the record demonstrates that Russell did not complain to Dr. Stewart or her physicians that she was suffering from blurred vision. She is entitled to no relief on this basis.

1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

According to Russell, she is "in constant pain all the time." (R. 29). At the administrative hearing, the plaintiff testified that she could not dress herself, and she cannot get up out of a chair. (R. 35). She testified that her pain is a level ten on a scale of one to ten. (R. 30). She further testified that her medication makes the pain "bearable." (*Id*.) She drops things because she has no feeling in her hands. (R. 32). She does no chores around the house. (R. 34). As explained more fully below, the ALJ did not fully credit this testimony.

The ALJ discredited the plaintiff's testimony of disabling pain and functional restrictions.

> After considering the evidence of the record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity.

(R. 16).

If this were the extent of the ALJ's credibility, the plaintiff might be correct. However, the ALJ continued his analysis.

> The record revealed that the claimant was not in any acute distress. Although the claimant was diagnosed with abdominal pain and vomiting, the record did not reveal significant difficulties in attending to her activities of daily living or in meeting her personal needs. The claimant was at no time hospitalized for diabetes or depression. She was not prescribed any psycho-trophic medications. The record does not provide visual acuity medical records to substantiate retinopathy. She was at not (sic) time advised that her impairments rendered her disabled nor was she advised that she should discontinue working. The undersigned noted that the claimant has experienced some form of pain and discomfort, but such ash (sic) not been proven to be of disabling proportions as evidenced by the medical record and the claimant's activities of daily living.

(R. 16-17).

Finally, the ALJ concluded that

> [t]he record revealed that the claimant had no physical limitations and was prescribed medications that controlled her symptoms. The claimant demonstrated no difficulties in performing her activities of daily living and she was independent in her ability to physically function. The claimant reported no psychological limitations. She could follow instructions, get along with authority figures and manage changes in her life (Exhibit 17F). Additionally,

16

>the record did not reveal that the claimant was at no time hospitalized as a result of diabetic neuropathy or retinopathy. Although the claimant alleged an inability to sit thirty minutes and stand ten minutes. The record, however, did not provide medical information to substantiate a limited ability to stand or sit.

(R. 18).

The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. Prior to applying for disability, Russell's medical treatment was based on complaints of abdominal pain, not diabetic neuropathy or retinopathy. Even after she applied for disability, Russell repeatedly failed to take her diabetic medication as prescribed; she failed to follow her diabetic diet; and she failed to exercise as directed. Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, *or the record must be obvious as to the credibility finding. Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (emphasis added); *Jones*, 941 F.2d at 1532 (articulated reasons must be based on substantial evidence). The objective, medical records, coupled with Russell's own testimony, demonstrate that her allegations regarding the extent of her pain were not credible to the extent alleged. After a careful review of the record, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination. It is undisputed that the plaintiff suffers from pain. The ALJ considered that the plaintiff's underlying condition is capable of giving rise to some pain and other limitations, but he concluded that the plaintiff's underlying impairments are not so severe as to give rise to the disabling intractable pain as alleged by the plaintiff.

To the extent that the plaintiff argues that the ALJ should have accepted her testimony about her pain, as the court has explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

**C. New Evidence**. The sole remaining issue is whether this matter should be remanded to Commissioner for consideration of new evidence presented by the plaintiff to the Appeals Council and this court. *See* Doc. # 17, Pl's Br. at 13. New evidence presented to the Appeals Council, but not to the ALJ, may be considered by the court to determine whether remand is proper under 42 U.S.C. § 405(g). Section 405(g), in part, permits courts to remand a case to the Social Security Administration for consideration of new evidence under certain circumstances. In order to prevail on a claim for remand under § 405(g) a claimant must show that (1) there is new, non-cumulative evidence; ( 2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative hearing. *See Vega v. Comm'r of Social Sec.,* 265 F.3d 1214, 1218 (11th Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

In this case, Russell argues that hospital records and mental health treatment notes from September 2010 until December 2010 demonstrate that the ALJ's RFC finding is not

18

supported by substantial evidence. (Doc. # 17, Pl's Br. at 13). While this evidence is new because it was not before the ALJ, nor was it available at the time of the hearing, it is not material or relevant to the court's determination of whether the ALJ's decision was supported by substantial evidence.

> The new evidence must relate to the period on or before the date of the administrative law judge's ("ALJ") decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *cf.* 20 C.F.R. §§ 404.970(b), 416.1470(b) (requiring Appeals Council to consider new evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision"). Evidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review. *See Wilson*, 179 F.3d at 1279.

*Enix v. Commissioner of Soc. Security*, 461 Fed. Appx. 861, 863 (11th Cir. 2012). *See also Carroll v. Social Sec. Admin., Comm'r*, 453 Fed. Appx. 889, 892 (11th Cir. 2011) ("Evidence is irrelevant and immaterial when it relates to a time period after the eligibility determination at issue"); *Smith v. Social Sec. Admin.,* 272 Fed. Appx. 789. 800 (11th Cir. 2008) (evidence must relate to the "period on or before the date of the ALS's hearing decision"); *Goff v. Comm'r of Social Sec.*, 253 Fed. Appx. 918, 922 (11th Cir. 2007) (evidence must relate back to "relevant time period"); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 220 (11th Cir. 2007) (same).

Because the court reviews "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision," *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999), the fact

that Russell received additional treatment seven months after the ALJ's decision, is simply not relevant or probative of whether substantial evidence supports the ALJ's decision that the plaintiff was not disabled from the date of onset until February 2, 2010, the date of the administrative decision. *See Wilson*, 179 F.3d at 1279 ("While [physician's] opinion one year later may be relevant to whether a deterioration in [claimant's] condition subsequently entitled her to benefits, it is simply not probative of any issue in this case.")

## V. Conclusion

The court has carefully and independently reviewed the record, and concludes that the decision of the Commissioner is supported by substantial evidence. The court will enter a final judgment affirming the Commissioner's decision.

Done this 7th day of December, 2012.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE